**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**


JIMMY WAYNE BASS,                           :
AIS 251151,
                                            :
          Petitioner,
                                            :
vs.                                                    CA 10-0446-CB-C
                                            :
CHERYL PRICE,
                                            :
          Respondent.


**REPORT AND RECOMMENDATION**

Jimmy Wayne Bass, a state prisoner presently in the custody of the respondent, has

petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner

is challenging the validity of his January 9, 2007 reckless murder conviction in the Circuit

Court of Mobile County, Alabama. Bass was sentenced to life imprisonment on February 15,

2007. (Doc. 1, Exhibit 3) The Alabama Court of Criminal Appeals affirmed petitioner's

conviction and sentence by memorandum opinion on May 23, 2008. *See Bass v. State*, 26

So.3d 505 (Ala.Crim.App. 2008) (table). Bass' application for rehearing was

overruled/denied on June 27, 2008 (Doc. 14, Exhibit B) and the Alabama Supreme Court

denied his application for writ of certiorari on August 8, 2008, *see Ex parte Bass*, 34 So.3d

741 (Ala. 2008) (table). That same day, August 8, 2008, the Alabama Court of Criminal Appeals entered a certificate of final judgment of affirmance. (Doc. 14, Exhibit D) Bass filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his conviction and sentence on January 27, 2009. (Doc. 14, Exhibit E, at 1.) The trial court summarily dismissed the petition, without a hearing, on April 1, 2009. (*See id.* at 2.) The Alabama Court of Criminal Appeals affirmed the trial court's judgment by memorandum opinion entered on September 25, 2009. (Doc. 14, Exhibit E.) Bass' application for rehearing was overruled on October 23, 2009 (Doc. 14, Exhibit F) and his petition for writ of certiorari was denied by the Alabama Supreme Court, without written opinion, on June 18, 2010 (Doc. 14, Exhibit G).

In his petition before this Court, filed August 11, 2010 (*see* Doc. 1, at 28), Bass raises the following grounds which he claims entitle him to relief:

(1)      the trial court was without jurisdiction to render judgment or impose sentence because the jury was not sworn as required by law and jeopardy never properly attached;

(2)      he was denied a fundamentally fair trial because the jury was influenced and inflamed by prior bad acts information reported in the newspaper;

(3)      he was denied a fundamentally fair trial because of a break in the chain of custody and the trial court's failure to charge the jury in accordance with § 12-21-13 of the Alabama Code;

(5)     the indictment did not state an offense at law;

(6)     the evidence at trial was insufficient to prove the culpable equivalent of intentional murder;

(7)     it was error for the trial court to fail to charge the jury that conduct manifesting extreme indifference to human life contemplates conduct that is the culpable equivalent of intentional murder; and

(8)     ineffective assistance of trial and appellate counsel.[1]

---

[1]     Petitioner argues that his trial attorney, James Byrd, Esquire, provided ineffective assistance in the following respects: (1) he failed to perform any meaningful investigation and, in particular, failed to interview the State's witnesses; (2) he admitted petitioner's guilt during opening arguments without obtaining petitioner's permission or discussing any type of trial strategy with him; (3) he failed to ensure that the petit jury was properly sworn as required by law; (4) he failed to object and bring to the court's attention the fact that jurors were reading a newspaper article containing information prejudicial to petitioner; (5) he failed to request a jury instruction in accordance with § 12-21-13 of the Alabama Code and move for exclusion of the blood evidence; (6) he refused to allow Bass to testify at trial; (7) he failed to request that the blood samples taken from petitioner be analyzed by an independent laboratory; (8) he failed to ensure that the trial record was complete and that the jury selection proceedings were transcribed; and (9) he failed to object to unauthorized communication and contact between jurors and the assistant district attorney.

Bass also contends that his attorney provided ineffective assistance on appeal inasmuch as he failed to present any meritorious issues or grounds on appeal and failed to order the complete record-including voir dire proceedings and side bar conferences-for appeal.

# FINDINGS OF FACT

1.      Bass was convicted of reckless murder in the Circuit Court of Mobile County,

Alabama on January 9, 2007. (*Compare* Doc. 1, at 1 *with* Doc. 3, at 2) Petitioner was

sentenced to life imprisonment on February 15, 2007. (Doc. 1, Exhibit 3) The Alabama Court

of Criminal Appeals affirmed petitioner's conviction and sentence by unpublished

memorandum opinion on May 23, 2008. *See Bass v. State*, 26 So.3d 505 (Ala.Crim.App.

2008) (table).

Jimmy Wayne Bass was indicted by a Mobile County grand jury in June 2006 for one count of reckless murder, a violation of § 13A-6-2(a)(2), Ala. Code 1975. The indictment charged that Bass recklessly engaged in conduct manifesting extreme indifference to human life and created a grave risk of death to a person other than himself in that Bass drove his vehicle under the influence of alcohol and/or crossed into the lane of oncoming traffic and struck the vehicle in which Teresa Moore was driving, killing her. The jury found Bass guilty as charged in the indictment and the trial court sentenced Bass to life imprisonment.

The State presented evidence, and Bass does not dispute, that he was operating his pickup truck while he was under the influence of alcohol. The toxicologist testified that her tests revealed that a sample of Bass's blood, taken approximately two and one-half hours after the incident, revealed a blood-alcohol level of .321 percent. The toxicologist further testified that alcohol consumption affects a driver's judgment and his reaction time. Drivers who have consumed alcohol have slowed information processing, she said, and they have more difficulty judging speed and distance from the cars around their own vehicle. Finally, the toxicologist testified that any impairment is going to be greater as the alcohol level rises.

Cleotha David Pippin testified that on September 23, 2005, he was driving his pickup truck approximately 40 miles per hour and was traveling

4

east on Old Pascagoula Road, a two-lane road. Pippin testified that it had been raining earlier, but that it was not raining heavily at that time. Bass was traveling west on the same road in his pickup truck. Pippin observed Bass's truck cross the center line and come into his lane. Pippin testified that Bass did not react or attempt to avoid an impact. Pippin pulled his truck as far to the right as he could and Bass's truck struck the left front quarter panel of Pippin's truck, causing it to crash into a ditch.

Theresa Lloyd was driving behind Pippin's truck in her automobile. She, too, saw Bass's truck cross the center line. She responded by applying her brakes and steering her automobile off the road. She saw Bass's truck strike Pippin's truck, and metal from his truck became wedged beneath her automobile.

Witnesses testified that after Bass's truck struck Pippin's truck in Pippin's lane of travel, Bass's truck initially returned to the west-bound travel lane, then it crossed the center line again and it struck a minivan head-on. The van was driven by Teresa Moore, and she died at the scene. The medical examiner testified that Moore sustained blunt-force injuries to the head and neck; skull, neck, and pelvic fractures, and multiple fractures of the extremities; and lacerations to the liver and spleen. Moore also suffered from brain hemorrhaging.

Several witnesses testified that they observed alcohol containers in the floorboard of Bass's truck and they could smell the presence of alcohol on Bass and in his truck. Bass had two prior convictions for driving under the influence of alcohol.

## I.

Bass first contends that the indictment charging him with reckless murder did not state an offense. Specifically, Bass argues that the indictment did not charge that he committed any act under circumstances manifesting extreme indifference to human life, and that it did not notify him of the circumstances under which this alleged conduct manifested extreme indifference to human life. Bass presented this claim in the trial court by way of a motion to dismiss the indictment, and the trial court denied the motion.

Section 13A-6-2(a)(2), Ala. Code 1975, the statute under which Bass was charged, states, in relevant part:

(a)     A person commits the crime of murder if:

.     .     .

(2)     Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.

The indictment against Bass charged, in relevant part, that

on or about September 23, 2005, [Bass] did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said defendant, and did thereby cause the death of Teresa Moore . . . by driving under the influence of alcohol and/or crossing into the lane of oncoming traffic and by striking the vehicle Teresa Moore was driving, in violation of § 13A-6-2(a)(2) of the Code of Alabama.

One of the fundamental purposes that an indictment serves, which has been referred to by the United States Supreme Court and also by this Court, is to apprise a defendant of the nature and cause of the accusation made against him in order that he can prepare an adequate defense.

Rule 13.2(a), Ala.R.Crim.P., provides that an indictment shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment. In Alabama, [a]n indictment is sufficient if it substantially follows the language of the statute violated, provided the statute

prescribes with definiteness the elements of the offense.

The indictment against Bass substantially followed the language of § 13A-6-2(a)(2), Ala. Code 1975, and it gave Bass notice of the charge against him. Therefore, the trial court did not err when it denied Bass's motion to dismiss the indictment.

## II.

Bass also contends that the evidence was insufficient to prove that he was guilty of reckless murder, and that it only established that he was guilty of reckless manslaughter. Specifically, Bass argues that the State failed to establish that he operated his vehicle in a grossly wanton manner under circumstances exhibiting some shocking, outrageous, or special heinousness, which, he says, was necessary to prove that he was guilty of reckless murder.

Initially, we note our well-established standard for reviewing challenges to the sufficiency of the evidence: In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt. When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision. The role of appellate courts is not to say what the facts are. Our role is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.

In Allen v. State, 611 So.2d 1188[, 1193] (Ala.Crim.App. 1992), this Court addressed the element of reckless murder that Bass argues the State

failed to prove – the manifestation of extreme indifference to human life. The Court stated:

> For years, the risks and dangers of driving while intoxicated have been well publicized and it is virtually impossible for any reasonably intelligent person to be unaware of those risks and dangers. Those who persist in engaging in that type of conduct must accept the risk of being prosecuted for any number of offenses, including reckless murder.

In the nearly 16 years since this Court made that statement, public awareness of the risks and dangers of driving while intoxicated has increased greatly, and it remains true today that it is virtually impossible for a reasonably intelligent person to be unaware of the risk of accidents, injuries, and death that could result from driving while intoxicated. As was true in Allen, those who persist in driving while under the influence of alcohol in spite of the increased public awareness of its dangers risk a variety of legal consequences.

When considering whether the evidence was sufficient to support Allen's conviction for reckless murder, this Court stated: Where we have previously found the evidence to be sufficient to support a conviction for reckless murder, the defendant was operating his vehicle in a grossly wanton manner or under circumstances exhibiting some shocking, outrageous, or special heinousness. The Court then discussed one of those cases in detail:

> In Jordan v. State, . . . the defendant was convicted of reckless murder under § 13A-6-2(a)(2). The evidence showed that the defendant arrived at a friend's house in an intoxicated condition, consumed two beers, then drove with his friend to a package store some two miles distant. The defendant drove to the store in a reckless manner, occasionally swerving completely into the oncoming lane of traffic on the two-lane road, running off the road, and forcing two oncoming cars from the road by driving in the oncoming traffic lane. The defendant purchased a bottle of tequila at the package store.

He drank from this bottle during the drive back to his friend's house and continued to drive in a reckless fashion. At one point when the defendant was driving in the wrong lane, his friend took the steering wheel and eased the vehicle back into the proper lane. While looking angrily at his friend, the defendant jerked the steering wheel back, causing the vehicle to re-enter the other lane of traffic where it collided with a vehicle driven by John Odom, killing Odom.

The State presented evidence that the defendant's blood alcohol content was .14%. In addressing the defendant's contention that this evidence should not have been admitted, we observed:

> It is well settled under our decisions that where the accused is himself the driver of an automobile and drives it in a manner greatly dangerous to the lives of others so as to evidence a depraved mind regardless of human life, he may be guilty of reckless murder if his anti-social acts result in the death of another, and this though he had no preconceived purpose to deprive any particular human being of life.

> In the present case had the defendant been completely sober, his actions before the collision would have evidenced a depraved mind functioning without regard to human life. The fact that a defendant had been drinking before an accident is just one further circumstance to prove that he possessed an extreme indifference to human life.

Depending on the situation, drunk driving may be a circumstance that a jury could find to manifest extreme indifference to human life. Jordan and the other cases cited above demonstrate that the situation that will support a conviction for reckless murder must involve something more

than driving after having consumed alcohol and becoming involved in a collision. As noted above, § 13A-6-2(a)(2) contemplates conduct that is the culpable equivalent of intentional murder.

The Court also discussed the similarities between the facts under review and the facts in <u>Walden v. Commonwealth</u>, 805 S.W.2d 102 (Ky. 1991)[:]

> We note that the evidence in the instant case parallels, to some extent, the evidence in <u>Walden v. Commonwealth</u>. In <u>Walden</u>, the defendant dropped a wheel off the pavement, lost control, crossed the center line, and struck the victim's vehicle. The defendant in <u>Walden</u> was also speeding. Further, he had blood alcohol level of .297%, which an expert witness testified was not far short of the 0.3% reading at which the average person would normally pass out. The expert also testified that this level of intoxication would delay reaction time and cause disorientation, confusion, a problem with depth perception and balance, and affect one's judgment. <u>The Kentucky Supreme Court held that the extreme nature of the defendant's intoxication was sufficient evidence from which a jury could infer wantonness so extreme as to manifest extreme indifference to human life</u>. Although there was no evidence in this case that the appellant was speeding and the appellant's blood alcohol content was somewhat lower than Walden's, we are unwilling to say that those differences, as a matter of law, render the evidence in this case insufficient to support the appellant's conviction.

The <u>Allen</u> Court held that there was sufficient evidence from which the jury could have concluded that Allen's overall conduct manifested an extreme indifference to human life. The Court also noted that the trial court had instructed the jury on lesser-included offenses – manslaughter, vehicular homicide, and criminally negligent homicide. It was within the province of the jury, not this Court, to determine the culpability level of the appellant.

Although Bass argues that the State failed to establish that he engaged in any conduct that manifested an extreme indifference to human life or that he drove in a manner greatly dangerous to the lives of others, we disagree. The State presented evidence that Bass had been convicted twice of driving under the influence of alcohol; that his blood-alcohol level, at .321 percent, was four times the legal limit for operating a motor vehicle in Alabama; that he had open containers of alcohol in his vehicle, which permitted the inference that Bass had continued to consume alcohol while he was driving; and that he appeared to have been unaware that he had crossed into oncoming traffic and made no attempt to return to his lane before he struck the first of the vehicles involved in the accident. These circumstances were sufficient to establish a prima facie case of reckless murder, and they serve to refute Bass's assertion that the evidence established only that he had been involved in an accident after he consumed alcohol. The extremely high level of Bass's intoxication, particularly in light of his prior convictions for driving under the influence, was a factor from which the jury could have found that Bass manifested an extreme indifference to human life. In addition, as in Allen, the court here instructed the jury on the lesser-included offenses of manslaughter, criminally negligent homicide, and vehicular homicide. The trial court also specifically instructed the jury that driving after having consumed alcohol and being involved in an accident was not sufficient, without more, to prove reckless murder.

The State presented a prima facie case of reckless murder, and the case was properly submitted to the jury for its determination of Bass's level of culpability. Therefore, the trial court did not err when it denied Bass's motion for a judgment of acquittal.

## III.

Bass contends that the trial court erred when it refused to give a written requested jury instruction. Specifically, Bass requested that the court instruct the jury that conduct which manifests extreme indifference to human life contemplates conduct that is the culpable equivalent of intentional murder. Bass maintains that the trial court failed to fully instruct the jury on the elements of reckless murder, because, he says, it failed to charge the jury that in addition to proving that Bass's conduct created a

grave risk of death to someone else, the State had to prove that the conduct occurred under circumstances manifesting extreme indifference to human life. Bass also contends that the trial court's instruction allowed the jury to find him guilty of reckless murder even if it found that the State proved only the element that Bass had created a grave risk of death to another person.

A trial court has broad discretion in formulating its jury charge, so long as the charge accurately reflects the law and the facts of the case. When reviewing a trial court's jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them.

The trial court instructed the jury using language that was nearly identical to § 13A-6-2(a)(2), Ala. Code 1975, as quoted above. The court initially charged the jury:

> A person commits the crime of murder if he causes the death of another person, and in performing the acts or act which caused the death of that person, he recklessly engages in conduct which creates a grave risk of death to a person other than himself which under the circumstances manifests extreme indifference to human life.

A charge which tracks the identical language of a statute is proper.

The trial court also instructed the jury about each element the State had to prove to establish Bass's guilt on the charge of reckless murder:

> To convict the State must prove beyond a reasonable doubt each of the following elements of murder: that Theresa Moore is dead, that the Defendant Jimmy Wayne Bass caused the death of Theresa Moore by driving under the influence of alcohol and crossing the center line of the road and striking the vehicle driven by Theresa Moore, and that in committing the acts which caused the death of Theresa Moore, the Defendant acted with extreme indifference to human life. Extreme indifference is defined as a person acts with extreme

indifference if under circumstances the actor recklessly engages in conduct which creates a grave risk of death to a person other than himself. A person acts recklessly with respect to that conduct when the actor is aware of a substantial and unjustifiable risk that a result will occur but consciously disregards that substantial and unjustifiable risk. The risk of death to another must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. If you are convinced from the evidence that they've proven their case beyond a reasonable doubt of the elements of murder then you should find him guilty. But if you find that they've failed to prove beyond a reasonable doubt any one or more of those elements of murder you cannot find him guilty of murder.

This instruction was nearly identical to the language in the <u>Alabama Pattern Jury Instructions: Criminal</u> (3d ed. 1994).

The trial court's charge to the jury on reckless murder accurately reflected the law and the facts of the case, it tracked the language of the statute, and it was nearly identical to the pattern jury instruction. We find no error in the trial court's instructions on reckless murder or in the trial court's refusing Bass's requested instruction.

Based on the foregoing, the judgment of the trial court is affirmed.

(Doc. 14, Exhibit A, at 1-12 (internal citations, quotation marks, footnotes, ellipses and brackets omitted; emphasis in original).) Petitioner's application for rehearing was overruled on June 27, 2008 (Doc. 14, Exhibit B) and his petition for writ of certiorari to the Alabama Supreme Court was denied on August 8, 2008, *see Ex parte Bass*, 34 So.3d 741 (Ala. 2008) (table). A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on August 8, 2008. (Doc. 14, Exhibit D.)

2.      Bass filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama,

collaterally attacking his conviction and sentence on January 27, 2009. (*See* Doc. 14, Exhibit

E, at 1.)  The trial court summarily dismissed the petition, without a hearing, on April 1, 2009

(*see id.* at 2) and Bass appealed (*id.*). On September 25, 2009, the Alabama Court of Criminal

Appeals affirmed the trial court's judgment by unpublished memorandum opinion. (Doc. 14,

Exhibit E.)

> In his petition, Bass made the following claims: (1) that the trial court was
> without jurisdiction to render judgment or impose sentence because it failed to
> properly swear the jury; (2) that he was denied a fair trial because the jury was
> inflamed by information in a newspaper concerning his prior bad acts; (3) that
> the trial court failed to correctly inform the jury on the chain of custody of
> evidence; and (4) that trial counsel was ineffective for failing to (a) object to
> the trial court's failures regarding the administration of the jury oath; (b) object
> to the jury having possession of an allegedly inflammatory newspaper article
> about him; (c) request a jury charge regarding the alleged break in the chain of
> custody of evidence; (d) investigate his case and interview the State's
> witnesses; (e) discuss trial strategy with him and admitted Bass's guilt; (f)
> allow Bass [to] testify at trial; (g) independently analyze Bass's blood; (h)
> ensure the trial record was complete with a full transcript of voir dire and side
> bar conferences; and (i) object to the Assistant District Attorney's
> communication with the jury at trial. Bass also claimed that appellate counsel
> was ineffective for failing to raise the aforementioned issues on appeal.

> The State refuted the merits of Bass's claims, argued that Bass's claims
> were insufficiently pleaded or were not pleaded with specificity, and should be
> summarily dismissed. On April 1, 2009, the circuit court summarily dismissed
> Bass's petition. The circuit court's written order explained:

>> Petitioner alleges the Court was without jurisdiction to
>> render the judgment or to impose the sentence because the trial
>> jury was not sworn. In support of this contention, Petitioner
>> asserts that the jury was not sworn in until after the opening

statements were made and attached the relevant portion of the trial transcript. This argument is without merit. Petitioner's exhibit #1 clearly shows that the jury was sworn in prior to any testimony being taken. Petitioner has pointed to no case law which would suggest that the timing of the oath being given was prejudicial to him.

To the contrary, all the case law cited by Petitioner states that the administration of the oath is statutory and must be given and that jeopardy attaches when the jury is empaneled and sworn. In this case, the jury was properly empaneled and sworn prior to the taking of any witness testimony. Thus, Petitioner has failed to state a claim and has presented no material issue of fact or law which would entitle him to relief[,] R. 32.7(d). The Court finds that it [] in fact administer[ed] the oath to the jury, therefore this claim is without merit.

Petitioner's next group of allegations involve the Constitution of the United States or of the State of Alabama requiring a new trial, a new sentenc[ing] proceeding, or other relief because he was denied effective assistance of counsel. In order to show that his counsel was ineffective, Petitioner would have to show unto this Court (1) that his Counsel's performance was deficient, and (2) that he was prejudiced by that deficient performance. See, Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.

It is important to note that when a court reviews a postconviction claim for relief based on ineffective assistance of counsel, the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland v. Washington makes clear that [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.

The Supreme Court further indicated that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. An accused is entitled not to errorless counsel and to counsel judged ineffective by hindsight but to counsel reasonably likely to render reasonably effective assistance. The purpose of ineffectiveness review is not to grade counsel's performance but rather whether the adversarial process at trial worked adequately.

Petitioner alleges he was denied effective assistance of trial counsel because his counsel failed to object because the jury was not sworn in. For the reasons stated above, this allegation is without merit and fails.

Petitioner next alleges he was denied effective assistance of trial counsel because the jury was influenced and inflamed by his prior bad acts. Specifically Petitioner alleges the jury read a newspaper article which advised he had five (5) prior DUIs and only two (2) were to be admitted into evidence. Thus his Counsel was ineffective because he was made aware of this and failed to take any action. Petitioner has attached the affidavits of his sister, mother and one other to support this allegation. This argument should fail.

Prior to trial, the Court instructed the jury not to read anything in the newspaper or watch the trial on television or list[en] to it on the radio. Jurors should not be permitted to read

newspapers containing statements of fact pertaining to a trial. However, the fact that a juror has read a newspaper with such information does not automatically entitle a defendant to a mistrial. Even assuming that the jurors read the newspaper article about the trial, Petitioner must show that he was prejudiced by it and/or that the jury's verdict was somehow affected by the article.

Petitioner has failed to allege which jurors read the article, what if anything the jurors may have said after reading the article, and what reaction the jurors had to reading the article. While it is true that the jury was only to have knowledge of three (3) (sic) prior DUIs, Petitioner has failed to allege how the knowledge of [t]he additional two (2) (sic) priors would have affected the verdict. Petitioner's trial counsel has also directly refuted the allegation that he was made aware of the jurors reading the newspaper article. Petitioner has failed to plead this allegation with specificity. R. 32.6(b). Petitioner has also failed to meet the two-pronged test set out in <u>Strickland</u>.

Petitioner also allies (sic) he was denied effective assistance of counsel because his trial counsel failed to request a jury charge regarding a break in the chain of custody. This argument is also without merit and should fail. The Alabama Supreme Court held that the chain of custody is composed of links. A link is defined as anyone who handled the item. The State has to identify each link from the time the item was seized.

In order to show a proper chain of custody, the record has to show each link and three other criteria: 1) the receipt of the item, [2)] the ultimate disposition of the item, i.e., transfer, destruction, or retention; and 3) the safeguarding and handling of the item between receipt and disposition. If the State fails to identify a link or fails to show the three criteria, the result is a missing link and the item is inadmissible. However, if the State shows circumstantial evidence as opposed to direct evidence, the result is a weak link and becomes a question of credibility and weight, not one of admissibility.

Petitioner contends that two lab employees did not testify at trial and two hospital employees did not testify at trial. However, these individuals were identified by the State during the trial. In this case, the toxicologist, Brenda Jaye[,] testified that these individuals received the item on behalf of the forensic laboratory and that when she received the item it was sealed.

Petitioner also alleges that there were also two (2) unidentified hospital workers at the hospital. However, Trooper Burrell testified that the package was sealed at that time. Thus, Petitioner has failed to state a claim and no material issue of law or fact exists which would entitle him to relief[,] R. 32.7(d). Thus, his trial counsel could not have been ineffective for failing to request a jury charge based on a break in the chain of custody when there was no legal basis for such objection.

Petitioner next alleges he was denied effective assistance of trial counsel because trial counsel failed to investigate. Specifically, Petitioner alleges trial counsel failed to interview the State's witnesses. This argument should fail. Petitioner has failed to allege what[,] if any, additional[] information his counsel would have obtained in interviewing the State's witnesses. R. 32.6(b). Petitioner's counsel states that he was provided discovery in this matter and reviewed that discovery. Petitioner's counsel also requested and was allowed time to review the State's file which contained the statements and/or reports of the witnesses. Thus, Petitioner has failed to meet the two[-]pronged standard set out in <u>Strickland</u>.

Petitioner next alleges he was denied effective assistance of counsel because trial counsel did not discuss trial strategy with him and that [c]ounsel admitted he was guilty. This was a reasonable strategic decision to admit Petitioner's limited guilt in order to diminish the impact of the evidence presented at trial. Throughout the entire process, Petitioner's counsel took the approach that he committed the lesser offense of manslaughter which required proof of different elements and carried a lighter

sentence.

Petitioner's counsel argued that driving under the influence of alcohol and being involved in a collision was not murder under the theory of grave indifference to the value of human life and that the State was unable to present a circumstance exhibiting shocking, outrageous, special heinousness to support a murder conviction. Additionally, Petitioner's counsel directly refutes the allegation that he did not consult with Petitioner regarding the trial strategy. Petitioner has failed to show how his [c]ounsel's argument that he committed a lesser included offense was prejudicial to him and how the outcome of the trial would have been different had he not argued this theory of defense, nor has he shown that this trial strategy was outside the realm of reasonable professional judgment. Thus, Petitioner has failed to meet the <u>Strickland</u> test.

Petitioner next alleges he was denied effective assistance of counsel because his trial counsel refused to allow him the right to testify. Petitioner fails to allege that he advised his trial counsel he wished to testify at the trial of this matter. Additionally, Petitioner's counsel refutes this allegation.

Petitioner next alleges he was denied effective assistance of counsel because his trial counsel failed to have the blood samples independently analyzed. In support of this contention, Petitioner cites <u>Lacerate v. Town of Killed</u>. This argument is based on an incorrect statement of the law. In that case, the defendant personally requested the opportunity to obtain an independent test of his blood alcohol content pursuant to 32-5A-194(a)(3), Code of Alabama 1975.

In further support of this contention, Petitioner cites to <u>Horton v. State</u>, where a defendant was given IV fluids prior to the samples being taken. Petitioner then correctly states that the IV fluids would have reduced his blood alcohol level. Thus, based on Petitioner's argument, his blood alcohol level was substantially higher prior to the administration of the IV fluids.

19

Even if his trial counsel had requested independent lab results, there is no reasonable probability that the outcome of the trial would have been any different. In fact based on the information presented in Petitioner's argument, any information obtained would have only bolstered the State's evidence against him. Petitioner has failed to meet the two-pronged test set out in Strickland. Petitioner's allegation that his trial counsel did not receive the toxicological analysis report is without basis.

Petitioner next alleges he was denied effective assistance of trial counsel because trial counsel failed to make sure the trial record was complete and voir dire was transcribed and included. Petitioner has failed to show how he was prejudiced by this or that the outcome of his trial would have been different. Petitioner has made no allegations that an error occurred during voir dire. Thus, this claim fails for lack of specificity. R. 32.6(b).

Petitioner also alleges he was denied effective assistance of counsel because counsel failed to make sure that the trial record was complete and the side bar discussions were included in the transcript. This argument is directly refuted by the record.

Petitioner next alleges he was denied effective assistance of counsel because counsel failed to object to the Assistant District Attorney's communication and contact with the jurors. This argument is refuted by Petitioner's counsel.

Petitioner also alleges he was denied effective assistance of appellate counsel because of the above. For the reasons stated above, these claims also fail. Petitioner has failed to state a claim. R. 32.7(d).

This Court finds that Petitioner received effective assistance of counsel at both the trial and appellate levels and Petitioner's claims are without merit.

Accordingly, this Court is authorized to dismiss the

petition as being without merit, for failure to state a claim and for having raised no issue of material fact or law.

The petition is dismissed.

This appeal ensued.

On appeal, Bass argues that he met his burden of pleading specific facts that would otherwise entitle him to relief and the circuit court erred in summarily dismissing his petition without holding an evidentiary hearing. We have reviewed the record for this case, the circuit court's written order, the case law cited therein, and the affidavit of Bass's trial attorney James M. Byrd,[2] and we now adopt the circuit court's written order as part of this

---

[2]     This affidavit reads, in part, as follows:

5.     The State of Alabama provided discovery in this matter.

6.     I reviewed the discovery in this matter.

7.     I have no independent recollection of whether the jury was sworn in this matter, however, the trial transcript reflects the jury was properly sworn prior to any testimony by any witness. Therefore, there was no duty for me to object on this basis.

8.     I have no independent recollection of whether the jury had a newspaper in the jury room during the trial of this matter, however I have no memory or record of anyone mentioning this fact to me during or after the trial.

9.     I saw nothing wrong with the chain of custody regarding the blood evidence offered at the trial of this matter. The two (2) people referred to by Mr. Bass in his petition were persons employed by the Department of Forensic[] Sciences. Additionally, missing links in the chain of custody affect the credibility, not the admissibility of the evidence.

10.     I thoroughly reviewed the discovery in this matter and based on it and my experience, a trial strategy was developed which I fully discussed with Mr. Bass. That strategy was to argue manslaughter. This strategy involved arguing different elements which the State failed to prove. Thus

opinion. The circuit court correctly determined that Bass's arguments regarding the swearing of the jury, juror bias, and chain of custody were without merit, insufficiently pleaded, or failed to state a claim upon which relief could be granted. Furthermore, the circuit court correctly found that Bass's claims of ineffective assistance of trial and appellate counsel were without merit, insufficiently pleaded under Strickland, refuted by the record, or refuted by the affidavit sworn by Bass's trial attorney and attached by the State to its response to Bass's petition. Accordingly, the circuit court properly summarily dismissed Bass's petition without holding an evidentiary hearing.

Bass also argues that the circuit court failed to address his claims regarding chain of custody and testimony involving the blood evidence presented at trial. The circuit court summarily dismissed this petition on the grounds that the claims included therein were without merit. Thus, the circuit court found any argument offered by Bass that was not specifically addressed in its written order to be meritless. Furthermore, the circuit court found Bass's claims regarding the chain of custody and the blood evidence submitted at trial to be without merit. Accordingly, Bass's claim that the circuit [court's] order is

---

the jury would have no alternative but to find Mr. Bass not guilty of the murder charge. I am unaware of any inconsistent statements given by the State's witnesses. The line of defense pursued in this matter was a lesser included offense. It was strictly trial strategy to argue manslaughter due to this approach. Manslaughter required different elements than murder which would have given the jury no alternative but to find Mr. Bass not guilty of the murder charge.

11.     Based on my review of the discovery and the evidence, I informed Mr. Bass of all developments in his case and kept him informed throughout the trial and the appellate process.

1[2].     To the best of my recollection, the trial record was complete and voir dire was transcribed. There was no reason to have the side bar conferences recorded.

1[3].     To the best of my recollection, there was no improper contact between the Assistant District Attorney and the jury and no one mentioned said contact to me during or after trial.

(Doc. 14, Exhibit I, Affidavit of James M. Byrd)

deficient for failing to address these claims is meritless.

Bass also [] contends that the circuit court's order is deficient on the grounds that it was adopted from the State's response and failed to enter specific findings of fact. The Alabama Supreme Court and this Court have repeatedly upheld a circuit court's wholesale adoption of a proposed order prepared by one of the parties. Thus, the circuit court properly adopted its order from the State's response. Furthermore, because the circuit court did not hold an evidentiary hearing, it was not required to state a finding of fact with respect to each individual claim.

Rule 32.7(d), Ala.R.Crim.P., authorizes the circuit court to summarily dismiss a petitioner's Rule 32 petition

if the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.

Because Bass's petition was insufficiently specific, failed to state claims upon which relief could be granted, or the underlying claims did not raise issues of fact or law that would entitle him to relief, summary disposition was appropriate.

Based on the foregoing, the circuit court's judgment is due to be affirmed.

(Doc. 14, Exhibit E, at 1-12 (internal quotation marks, brackets and most internal citations omitted; footnote added).) On October 23, 2009, the Alabama Court of Criminal Appeals overruled petitioner's application for rehearing (Doc. 14, Exhibit F) and, on June 18, 2010, the Alabama Supreme Court denied Bass' petition for writ of certiorari without written opinion (Doc. 14, Exhibit G).

3.    Bass filed his federal habeas corpus petition in this Court on August 11, 2010 (Doc. 1, at 28) and therein raises all claims he asserted on direct appeal and those claims asserted in his Rule 32 petition (*compare* Docs. 1 & 3 *with* Doc. 14, Exhibits A & E). In answer to the complaint, the respondent contends that all of petitioner's claims are meritless (Doc. 14, at 10-48) and also contends, in the alternative but in conclusory fashion, that Bass has defaulted his claims (*see id*. at 10). Because respondent makes no effort to identify which claims petitioner has procedurally defaulted and the particular bar which prohibits this Court from considering the merits of the claims raised by Bass (*see* Doc. 14), this Court should ignore respondent's alternative argument and concentrate solely upon whether any of petitioner's claims have merit.

## CONCLUSIONS OF LAW

1.    Bass filed his petition for habeas corpus relief in this Court on or about August 11, 2010, and therefore, his case clearly is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).  As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[3]

28 U.S.C. § 2254(d)(1) & (2) (footnote added). Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

2. In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two

---

[3]    Based upon the facts as found by the Alabama courts in their decisions, it is clear that no argument can be made that the decisions of any of those courts was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts except with respect to the number of prior DUIs that the jury had before it for its consideration. It is clear from the evidence provided to this Court, and as argued by petitioner, that the jury had before it evidence of two prior DUIs, not three as stated in the Rule 32 decisions. However, other than with respect to the number of DUIs before the jury for consideration, since this Court must presume as correct the determinations of all factual issues made by the Alabama courts, petitioner simply cannot rebut the presumption of correctness of any other factual findings by the Alabama courts in their decisions by clear and convincing evidence. The state courts' findings are based upon what a reasonable jury could have found the evidence to be.

conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

3.     In this case, it is clear that the Alabama courts reached the merits of all of petitioner's claims. (*Compare* Doc. 1 *with* Doc. 14, Exhibits A & E.) Bass cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to any of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the

"contrary to" clause, that the Alabama courts, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama courts, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.

4.     Bass' ineffective assistance of trial and appellate counsel claims (Doc. 1, at 8-17) were discussed and rejected by the Circuit Court of Mobile County, Alabama and the Alabama Court of Criminal Appeals in their decisions on collateral review (*see* Doc. 14, Exhibit E, DENIAL OF RULE 32 PETITION). Both courts specifically cited to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and, therefore, were well aware of the guiding principles set down by the Supreme Court in that case in reaching their decisions on petitioner's ineffective assistance of trial and appellate counsel claims. Petitioner cannot establish, under the "contrary to" clause, that the Alabama courts arrived at any conclusions that are opposite to those reached by the Supreme Court of the United States on a question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. As aforesaid, the state trial and appellate courts correctly identified *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,

27

80 L.Ed.2d 674 (1984) as controlling legal authority, applied it to Bass' various claims and rejected all of those claims; therefore, the State courts' analysis cannot be found to be "contrary to" controlling Supreme Court precedent. *See Williams v. Taylor, supra,* 529 U.S. at 405 & 406, 120 S.Ct. at 1519 & 1520 ("The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' . . . [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as 'diametrically different' from, 'opposite in character or nature' from, or 'mutually opposed' to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not 'mutually opposed' to *Strickland* itself."). Moreover, under the "unreasonable application" clause, petitioner has not and cannot establish that either Alabama court, though

recognizing the correct governing principles from the Supreme Court's decision(s), unreasonably applied those principles to the facts in this case. Again, here, both courts correctly recognized the applicability of *Strickland v. Washington*, *supra*, and reasonably applied the principles outlined in that case to the facts of petitioner's case in finding that trial and appellate counsel did not provide ineffective assistance to petitioner. *Williams v. Taylor, supra*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). Petitioner cannot and has not shown that either the Mobile County Circuit Court or Alabama Court of Criminal Appeals unreasonably applied any relevant precedent with respect to his claims of ineffective assistance of counsel nor is it debatable among reasonable jurists that the result of which petitioner claims is incorrect. Stated differently, it is not debatable among reasonable jurists that the trial court's rejection of petitioner's ineffective assistance of trial and appellate counsel claims is inherently incorrect.[4]

     5.    The Mobile County Circuit Court and Alabama Court of Criminal Appeals also rejected petitioner's claim that the trial court was without jurisdiction to render judgment or impose sentence because the jury was not sworn as required by law and jeopardy never

---

[4]    The undersigned agrees with the determinations of the Alabama courts that

properly attached. It is clear that "jeopardy attaches when the jury is empaneled and sworn[,]" *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978) and "from that point forward, the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." *United States v. Shafer,* 987 F.2d 1054, 1057 (4th Cir. 1993) (footnote and citations omitted); *see also Crist,* 437 U.S. at 36, 98 S.Ct. at 2161 ("Regardless of its historic origin, however, the defendant's 'valued right to have his trial completed by a particular tribunal' is now within the protection of the constitutional guarantee against double jeopardy, since it is that 'right' that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn."). In this case, while petitioner is correct that § 12-16-170 of the Alabama Code requires that a certain oath be given to petit jurors, that statute does not direct when the jurors must be so sworn. Here, there is no question but that the petit jurors were sworn following opening statements but before the taking of any testimony (*see* Doc. 18, T.T. 31 ("Ladies and gentlemen, I forgot to swear you in. Please stand up. (Jury was empaneled and sworn.)"). Because this particular panel of jurors reached a verdict finding Bass guilty of reckless murder (*see id*. at 215), Alabama's courts correctly determined that petitioner's argument in this regard was meritless. Petitioner's arguments to the contrary notwithstanding, jeopardy attached after opening statements but before the taking of any testimony and since that

---

neither trial nor appellate counsel provided him with constitutionally ineffective assistance.

30

particular panel of jurors reached a verdict Bass was not deprived of any constitutional right.

6.     In discussing claims of ineffective assistance of counsel, the decisions of the Mobile County Circuit Court and the Alabama Court of Criminal Appeals, on collateral review, discussed petitioner's claims that the jury was influenced and inflamed by prior bad acts and that there was a break in the chain of custody. (*Compare* Doc. 1, at 4-7 *with* Doc. 14, Exhibit E, at 4-7.) The undersigned cannot find that the Alabama courts' analyses of either of these claims on collateral review was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. With respect to the first issue, the trial and appellate courts determined that Bass failed to show that he was prejudiced by the newspaper article or that the jury's verdict was affected by the article. (*See* Doc. 14, Exhibit E, at 5.) The undersigned agrees with this conclusion and finds it consistent with the "'actual jury prejudice' test[]" set forth in *Williams v. Griswald,* 743 F.2d 1533, 1538-1540 (11th Cir. 1984).[5] As for the break in the chain of custody argument, the undersigned finds

---

[5]     Bass cannot establish actual prejudice given the findings of the state courts, which this Court must accept, that petitioner's attorney "directly refuted the allegation that he was made aware of the jurors reading the article." (Doc. 14, Exhibit E, at 5.) Moreover, as also pointed out by the state courts, Bass never alleged "'which jurors read the article, what if anything the jurors may have said after reading the article, and what reaction the jurors had to reading the article.'" (*Id.*)

In addition to the foregoing, it is clear that the newspaper article in question (*see* Doc. 1, Exhibit 4) was written objectively and contained no inflammatory or editorial material and, if it was read by any of the jurors, it was not read during a "'critical time'" during the trial. *Williams, supra,* 743 F.2d at 1539. Because Bass has not supplied this Court with any information indicating that specific jurors read the article and were influenced by the information that he had

compelling the analysis of the state courts and their ultimate conclusion that the blood evidence was not inadmissible. (Doc. 14, Exhibit E, at 5-7.) Moreover, "[f]ederal courts generally do not review a state court's admission of evidence in habeas corpus proceedings[]" and certainly do not "grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills v. Singletary,* 161 F.3d 1273, 1289 (11th Cir. 1998), *cert. denied sub nom. Mills v. Moore*, 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000). "'A denial of fundamental fairness occurs whenever the ***improper*** evidence "is material in the sense of a crucial, critical, highly significant factor."'" *Id.* (citations omitted; emphasis supplied). As previously indicated the admission of the blood evidence by the Mobile County Circuit Court was not erroneous and, therefore, did not affect the fundamental fairness of the trial. Accordingly, Bass is not entitled to habeas relief with respect to this claim.

7.     The final claims petitioner raises in this Court are the three claims he asserted on direct review: (1) the indictment did not state an offense at law; (2) the evidence presented at trial was insufficient to prove the culpable equivalent of intentional murder; and (3) it was manifest error for the trial court to fail to charge the jury that conduct manifesting extreme indifference to human life contemplates conduct that is the culpable equivalent to intentional

_____

five prior DUIs, as opposed to just the two DUIs which were allowed into evidence, and convicted him solely based on this extraneous information, the undersigned finds insufficient facts alleged to establish a constitutional violation. *See Williams, supra,* at 1540.

murder. Alabama's intermediate appellate court discussed each of these claims at length and determined that all of them lacked merit. (Doc. 14, Exhibit A, at 3-12)

8.     With respect to the indictment claim, the Alabama Court of Criminal Appeals noted that the United States Supreme Court recognizes that an indictment must apprise a defendant of the nature and cause of the accusation against him (Doc. 14, Exhibit A, at 4) and found that the indictment in this case substantially tracked the statute, Ala.Code § 13A-6-2(a)(2) and thereby informed Bass of the charge against him (*id.* at 5).[6]     9.     It is clear that "[a]n accused has a constitutional right to an indictment which puts him on notice of the case the prosecution will present at trial." *Thompson v. Nagle*, 118 F.3d 1442 (11th Cir. 1997) (citing *Kotteakos vs. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Peel*, 837 F.2d 975, 976-77 (11th Cir. 1988); and *Ex parte Washington*, 448 So.2d 404, 408 (Ala. 1984)), *cert. denied*, 522 U.S. 1127, 118 S.Ct. 1071, 140 L.Ed.2d 130 (1998). The United States Supreme Court has "identified two constitutional

---

[6]     The June, 2006 session of the Mobile County grand jury charged that Bass "on or about **September 23, 2005,** did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said defendant, and did thereby cause the death of **Teresa Moore** . . . by driving under the influence of alcohol and/or crossing into the lane of oncoming traffic **and by striking the vehicle Teresa Moore was driving**, in violation of § 13A-6-2(a)(2) of the Code of Alabama[.]" (Doc. 18, Exhibit J, Indictment.) Section 13A-6-2(a)(2), in turn, provides that "[a] person commits the crime of murder if . . . [u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person[.]" As found by the Alabama Court of Criminal Appeals, the indictment substantially tracked the language of the statute and placed Bass on notice of the charge and what he had to defend against.

requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 108, 127 S.Ct. 782, 788, 166 L.Ed.2d 591 (2007), quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). While the Alabama Court of Criminal Appeals did not mention *Thompson v. Nagle*, *Resendiz-Ponce,* or any comparable case, in its analysis of Bass' attack on the indictment, recognition by the appellate court of the proper analysis is clear from a reading of that decision. *Cf. Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) ("Avoiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Here, the language contained in the indictment satisfied all constitutional requirements and, therefore, the Alabama Court of Criminal Appeals correctly determined that the indictment against Bass did state an offense. In other words, this Court agrees with the Alabama Court of Criminal Appeals that Bass' indictment was sufficient and that petitioner's constitutional rights have not been violated.

10.     Petitioner next contends that the evidence submitted at trial was insufficient to prove the culpable equivalent of intentional murder and, therefore, his reckless murder

conviction is constitutionally infirmed. Although the Alabama Court of Criminal Appeals did not specifically cite to the Supreme Court's holding in *Jackson v. Virginia*, *infra*,[7] its analysis of Bass' sufficiency-of-the-evidence claim is in no manner contrary to that holding nor was there any unreasonable application of that case. It is simply not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Thus, petitioner's constitutional rights have not been violated in this regard.

11.     The final claim presented by Bass is that the trial court erred when it refused to charge the jury that conduct which manifests extreme indifference to human life contemplates conduct that is the culpable equivalent of intentional murder. The Alabama Court of Criminal Appeals rejected petitioner's argument and found that "[t]he trial court's charge to the jury on reckless murder accurately reflected the law and the facts of the case, it

---

[7]     Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Alabama Court of Criminal Appeals discussed at length how petitioner's conduct established his guilt of reckless murder. (Doc. 14, Exhibit A, at 5-10.) More specifically, Alabama's intermediate appellate court determined that the following circumstances presented a prima facie case of reckless murder, that is, prima facie evidence of extreme indifference to human life: "The state presented evidence that Bass had been convicted twice of driving under the influence of alcohol; that his blood-alcohol level, at .321 percent, was four times the legal limit for operating a motor vehicle in Alabama; that he had open containers of alcohol in his vehicle, which permitted the inference that Bass had continued to consume alcohol while he was driving; and that he appeared to have been unaware that he had crossed into oncoming traffic and made no attempt to return to his lane before he struck the first of the vehicles involved in the accident." (*Id*. at 9-10 (footnote omitted.)) In light of the foregoing evidence, it is clear to the undersigned that any rational trier of fact could have found the essential elements of reckless murder beyond a reasonable doubt. *Compare id. with* Ala.Code § 13A-6-2(a)(2).

tracked the language of the statute, and it was nearly identical to the pattern jury instruction." (Doc. 14, Exhibit A, at 12; *see also id*. at 10-12.) Inasmuch as petitioner's brief on direct appeal (*see* Doc. 1, at 25-27) and the decision of the Alabama Court of Criminal Appeals (Doc. 14, at 10-12) confine themselves entirely to state law on this issue, petitioner raises solely a state error for which federal habeas corpus relief is not available. *See Hamilton v. McNeil,* 2010 WL 3118590, *12 (S.D. Fla. July 9, 2010) ("State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review unless they are so prejudicial as to render the trial fundamentally unfair."), *report & recommendation adopted by* 2010 WL 3118588 (S.D. Fla. Aug. 5, 2010); *Phillips v. McNeil*, 2008 WL 410094, *9 (M.D. Fla. Feb. 12, 2008) ("Issues of jury instructions are matters of state law and are not cognizable on federal habeas corpus review."). In other words, petitioner makes no argument that the trial court's failure to charge the jury in the manner he alleges it should have been charged rendered his trial fundamentally unfair; therefore, his claim in this regard is one of state law not cognizable on federal habeas review. *Hamilton, supra*.[8]

---

[8] Even had Bass shrouded this claim in constitutional verbiage, he would still not be entitled to relief.

> An error in instructing the jury cannot constitute a basis for
> habeas relief unless the error so infected the entire trial that the
> resulting conviction violates due process. It is not sufficient that
> the instruction was undesirable, erroneous, or even universally

## C. **Certificate of Appealability.**

12.     Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).

---

> condemned.
>
> .     .     .
>
> An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. The effect of an incomplete instruction must be evaluated in light of the remainder of the charge and the trial as a whole.

*Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992) (internal quotation marks and citations omitted). As correctly found by the Alabama Court of Criminal Appeals, the trial court's jury instructions tracked the reckless murder statute and was all but identical to the relevant Alabama Pattern Jury Instruction. The trial court's failure to pick up and add to his charge the statement from *Allen v. State*, 611 So.2d 1188, 1192 (Ala. Crim. App. 1992) that "§ 13A-6-2(a)(2) contemplates conduct that is the culpable equivalent of intentional murder[,]" does not rise to the level of a denial of fundamental fairness inasmuch as in addition to tracking the statutory language of § 13A-6-2(a)(2) and the Alabama Pattern Jury Instructions in this regard, the trial court specifically instructed the jury that "the 'situation' that will support a conviction for reckless murder must involve something more than simply driving after having consumed alcohol and becoming involved in a collision." *Id.; compare id. with* Doc. 18, Exhibit J, T.T. 208 ("I charge you, ladies and gentlemen of the jury, that simply driving after having consumed alcohol and becoming involved in a collision is insufficient evidence in itself to support a conviction for extreme indifference to human life murder . . . ."). The appellate court's analysis and rejection of petitioner's jury instruction claim was correct and certainly suffers from no constitutional infirmity.

A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). The undersigned recommends that the Court find that reasonable jurists could not debate whether Bass' § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

13.    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge finds that petitioner's rights were not violated in this cause such that his request for habeas corpus relief should be denied. Bass is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 28th day of March, 2011.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).